UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL MOIS,<br><br>        Plaintiff,<br><br>   v.<br><br>A. CIOLLI, et al.,<br><br>        Defendants. | **Case No.: 1:20-cv-00885-JLT (PC)**<br><br>**ORDER DENYING MOTION TO APPOINT COUNSEL;**<br><br>**ORDER DENYING AS MOOT MOTION FOR LEAVE TO AMEND;**<br><br>**ORDER REQUIRING PLAINTIFF TO SUBMIT A RESPONSE**<br><br>**(Docs. 12, 13)**<br><br>**THIRTY-DAY DEADLINE** |

    Plaintiff is a federal inmate who has filed a first amended complaint asserting constitutional claims against governmental employees.[1] (Doc. 14.) Generally, the Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court

---

[1] Plaintiff brings this action pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971).

1

determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.     Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Prisoners may bring § 1983 claims against individuals acting "under color of state law." See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.    Plaintiff's Allegations

Plaintiff brings this action for the conditions of his confinement in the Special Housing Unit at the United States Penitentiary in Atwater, California ("USP-Atwater"). The named defendants are A. Ciolli, USP-Atwater Warden; K. Bennett, USP-Atwater Assistant Warden; B. Hurte, USP-Atwater Captain; and Gene Beasley, Western Regional Director. Plaintiff seeks declaratory relief and damages. Plaintiff's allegations may be fairly summarized as follows:

Plaintiff was housed in the SHU at USP-Atwater between July 16, 2019, and August 31, 2020. During that time, he was denied access to any reading materials, excluding a Bible but

including newspapers, books, magazines, college coursework, and religious materials. He was then later unable to have a radio or to keep his personal photographs in his cell. Plaintiff contends that he was offered these items back if he agreed to enter general population, but plaintiff declined due to safety concerns.

Plaintiff filed an informal inmate grievance concerning this issue on a BP-8, but his request was denied with reference to a Nov. 12, 2019, memorandum issued by the Western Regional Director, Gene Beasley, limiting the personal properly for inmates in the SHU. Plaintiff then filed a BP-9 Request for Administrative Remedy, which was denied by Warden Ciolli, again with reference to the aforementioned memorandum. Plaintiff later filed a BP-10, a Regional Administrative Remedy Appeal, which did not receive a timely response. Finally, plaintiff submitted a BP-11 to the General Counsel in Central Office. Apparently, no action has yet been taken on this appeal.

Plaintiff also complains that a temporary hold was placed in September 2019 on the accounts of those inmates housed in Administrative Detention like plaintiff, "under the pretense of an investigation." The hold was then replaced with "limited services" from November 2019 until plaintiff left USP-Atwater in August 2020, which allowed inmates one 15-minute call per month. This resulted in plaintiff's inability to place calls since he could not transfer funds to his phone account. After April 8, 2020, all calls were free due to the Covid-19 pandemic.

Concerning the telephone policy, plaintiff submitted a BP-8, BP-9, and BP-10, but he was transferred out of USP-Atwater before the matter could be resolved.

**III.    Discussion**

**A.  Bivens and the First and Eighth Amendment**

The Supreme Court first recognized an implied right of action for damages against federal officers in Bivens, 403 U.S. 388. The Court held that damages were recoverable directly under the Fourth Amendment when federal officers arrested and searched the plaintiff without a warrant or probable cause, and when they employed unreasonable force in making the arrest. Id. at 389, 395–96. In the years after Bivens, the Court also recognized implied rights of action for damages under the Fifth and Eighth Amendments. See Davis v. Passman, 442 U.S. 228 (1979) (recognizing a

3

damages remedy for a gender discrimination claim against a United States Congressman under the equal protection component of the Fifth Amendment Due Process Clause); Carlson v. Green, 446 U.S. 14 (1980) (recognizing a damages remedy against federal prison officials for failure to provide adequate medical treatment under the Eighth Amendment's Cruel and Unusual Punishment Clause). Recently, the Ninth Circuit Court of Appeals recognized a Bivens remedy for alleged violations of the First and Fourth Amendment arising from the actions of a federal patrol agent who shoved the plaintiff on his property and who then retaliated against the plaintiff when the latter complained to the agent's supervisor. Boule v. Egbert, --- F.3d ---, 2020 WL 6815073 (9th Cir. Nov. 20, 2020).

The Supreme Court "made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar v. Abbasi, ––– U.S. –––, 137 S. Ct. 1843, 1857 (2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). "This [trend] is in accord with the Court's observation that it has 'consistently refused to extend Bivens to any new context or new category of defendants.'" Id. (quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001)).

In Ziglar, the Supreme Court laid out a two-step test for determining when a Bivens claim should be recognized. "[T]he first question a court must ask ... is whether the claim arises in a new Bivens context[.]" Id. at 1864. A case presents a new context if it "is different in a meaningful way from previous Bivens cases decided by th[e Supreme Court]." Id. Ziglar outlined the following non-exhaustive "list of differences that are meaningful enough to make a given context a new one":

> A case might differ in a meaningful way because of [1] the rank of the officers involved; [2] the constitutional right at issue; [3] the generality or specificity of the official action; [4] the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [5] the statutory or other legal mandate under which the officer was operating; [6] the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or [7] the presence of potential special factors that previous Bivens cases did not consider.

Id. at 1859–60.

If the case presents a new Bivens context, then the court proceeds to step two. At step two, a court may extend Bivens in a new context only if two conditions are met. First, "the plaintiff

4

must not have any other adequate alternative remedy." Rodriguez, 899 F.3d at 738. Second, "there cannot be any 'special factors' that lead [the court] to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." Id. While the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Ziglar, 137 S. Ct. at 1857–58. Therefore, "to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1858.

      Plaintiff's contention that his First and Eighth Amendment rights were violated because he was unable to possess certain types of personal property in the SHU and because his inmate account was improperly limited plainly present new Bivens contexts. Because a Bivens remedy has never been recognized in the contexts that plaintiff alleges here, the Court must determine whether to extend the Bivens remedy to plaintiff's claim. To make that determination, the Court must first consider whether there is "any alternative, existing process for protecting the interest." Wilkie v. Robbins, 551 U.S. 537, 550 (2007). The existence of an alternative remedial scheme "amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." Id. Next, the Court must evaluate whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." Abbasi, 137 S. Ct. at 1857 (quoting Carlson v. Green, 446 U.S. 16, 18 (1980)). While the Supreme Court has not defined the phrase "special factors counselling hesitation," the inquiry should consider "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58. Specifically, the Court should consider the substantial defense costs created by personal-capacity claims against federal employees, as well as the "time and administrative costs attendant upon intrusions resulting from the discovery and trial process." Id. at 1856.

      Both the existence of alternative remedial processes and other special factors counselling hesitation weigh against extending the Bivens remedy to plaintiff's First and Eighth Amendment claims. First, federal prisoners have numerous alternative remedies available to them, including

the Federal Tort Claims Act and the Bureau of Prison's administrative grievance process. See 28 U.S.C. §§ 1346(b)(1), 2674 (allowing an inmate to seek money damages for personal injuries and property claims arising out of a federal employee's negligence or wrongful conduct); 31 U.S.C. § 3724(a) (allowing the Attorney General to settle claims for personal injuries and damaged or lost personal property caused by federal law enforcement); 28 C.F.R. § 542.10(a) (establishing administrative-grievance procedure for "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement"). The Ninth Circuit has recognized the adequacy of these alternative remedial schemes with regard to prisoners' First Amendment claims. See Buenrostro v. Fajardo, 770 F. App'x 807, 808 (9th Cir. 2019) (declining to extend Bivens remedy for a prisoner allegedly punished for pursuing grievances and litigation); Vega v. United States, 881 F.3d 1146, 1152-54 (9th Cir. 2018) (declining to extend Bivens remedy for a prisoner alleging his access to the courts was cut off due to filing lawsuits).

Second, issues concerning separation of powers and other "special factors" counsel hesitation. Tellingly, Congress "addressed the question of prisoners' remedies in the Prison Litigation Reform Act of 1995" and omitted a damages remedy, Buenrostro, 770 F. App'x at 808, which suggests that "Congress might doubt the efficacy or necessity of a damages remedy" against federal jailers, Abbasi, 137 S. Ct. at 1858. Moreover, plaintiff's claim implicates significant separation of powers concerns vis-à-vis prison administration and implying a new Bivens remedy for such claims would undoubtedly impose a large burden on the judiciary and prison officials. Cox v. United States, 2019 WL 5580966, at *8 (C.D. Cal. Aug. 30, 2019), report and recommendation adopted, 2019 WL 5579533 (C.D. Cal. Oct. 29, 2019). Accordingly, the Court should decline to imply a new Bivens remedy for plaintiff's First and Eighth Amendment claims.

**B.  The Religious Freedom Restoration Act**

Plaintiff also asserts a claim under the Religious Freedom Restoration Act ("RFRA") in response to the Western Regional Director's policy prohibiting possession of outside materials by SHU inmates, to include religious study materials and radios through which inmates can listen to religious sermons.

RFRA provides that absent a "compelling governmental interest" and narrow tailoring, 42 U.S.C. § 2000bb-1(b), the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." Id. § 2000bb-1(a). The statute was enacted "to provide a claim or defense to persons whose religious exercise is substantially burdened by government." Id. § 2000bb(b)(2). It therefore provided that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." Id. § 2000bb-1(c).

"Under RFRA, a 'substantial burden' is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit...or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1069-70 (9th Cir. 2008) (en banc); see also Oklevueha Native Am. Church of Haw., Inc. v. Lynch, 828 F.3d 1012, 1016 (9th Cir. 2016).

The Court concludes that plaintiff has not stated a cognizable RFRA claim. Although plaintiff alleges that his ability to enrich his Christian faith through receipt of religious materials and listening to religious sermons has been hampered, there is no contention that plaintiff is being coerced to act contrary to his Christian faith by the threat of civil or criminal sanctions. Accordingly, this claim is also subject to dismissal.

**IV.  Miscellaneous Motions**

**A.  Motion to Amend**

Plaintiff has filed a motion to amend his complaint. Because plaintiff may amend his complaint once as a matter of course, Fed. R. Civ. P. 15(a), this motion will therefore be denied as moot.

**B.  Motion to Appoint Counsel**

Plaintiff has also filed his third motion seeking the appointment of counsel. His two previous motions were denied on October 15, 2020. As plaintiff was previously informed, he does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the court cannot require an attorney to represent plaintiff pursuant

to 28 U.S.C. § 1915(e)(1).  Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989).  However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1).  Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases.  In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

In the present case, the court does not find the required exceptional circumstances.  Even if it is assumed that plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional.  This court is faced with similar cases almost daily.  Further, at this early stage in the proceedings, the court cannot make a determination that plaintiff is likely to succeed on the merits and based on a review of the record in this case, the court does not find that plaintiff cannot adequately articulate his claims.  Id.

**V.    Conclusion**

Plaintiff's complaint fails to state a claim on which relief may be granted. The Court will grant plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If the last option is chosen, the undersigned will issue findings and recommendations to dismiss the complaint without leave to amend, plaintiff will have an opportunity to object, and the matter will be decided by a District Judge.

If plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at

555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "First Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Accordingly, the Court ORDERS that:

1. Plaintiff's motion to amend (Doc. 13) is DENIED as moot;
2. Plaintiff's motion for appointment of counsel (Doc. 12) is DENIED;
3. Within thirty days from the date of service of this order, plaintiff must file either a second amended complaint curing the deficiencies identified by the Court in this order, a notice of voluntary dismissal, or a notice of election to stand on the complaint;

///
///
///

4. If plaintiff fails to file a first amended complaint or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to obey a court order and failure to state a claim.

IT IS SO ORDERED.

Dated: **December 16, 2020**         **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE