UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL MOIS,<br><br>    Plaintiff,<br><br>    v.<br><br>A. CIOLLI, et al.,<br><br>    Defendants. | Case No. 1:20-cv-00885-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>(Doc. 21)<br><br>**14-DAY DEADLINE** |

Plaintiff is a federal inmate who has filed a second amended complaint asserting constitutional claims against federal officials. (Doc. 21.) Plaintiff brings this action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). A *Bivens* action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 255 (2006) (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

Generally, the Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the

action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. PLEADING STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

Prisoners may bring § 1983 claims against individuals acting "under color of state law." *See* 42 U.S.C. § 1983; 28 U.S.C. § 1915(e) (2)(B)(ii). "Actions under [42 U.S.C.] § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991). Under *Bivens*, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. *See Bivens*, 403 U.S. at 397. To state a claim under *Bivens*, a plaintiff must allege (1) a violation of his constitutional rights, and (2) the alleged violation was committed by a federal actor. *See Van Strum*, 940 F.2d at 409; *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing *Shwarz v. United States*, 234 F.3d 428, 432 (9th Cir. 2000)). A plaintiff must plead more than mere negligence by a federal actor in order to state a colorable claim under *Bivens*. *O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1988). Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff brings this action for the conditions of his confinement in the Special Housing Unit at the United States Penitentiary in Atwater, California, where he

2

was housed from July 16, 2019, and August 31, 2020. The defendants are A. Ciolli, USP-Atwater Warden; K. Bennett, USP-Atwater Assistant Warden; B. Hurte, USP-Atwater Captain; and Gene Beasley, Western Regional Director. Plaintiff seeks compensatory and punitive damages.

Plaintiff asserts that he a Christian and has engaged in Bible studies and Christian college courses to become an ordained minister while in prison. He also corresponded with other believers as part of his religious practice. According to Plaintiff, in October 2019, Plaintiff began to receive property receipts for "religious material" that was placed into his personal property. Plaintiff addressed this with Assistant Warden Bennett, who responded that inmates were allowed to have Bibles.

On November 12, 2019, Plaintiff received a memorandum advising that radios and batteries were removed from the SHU commissary pursuant to a policy ordered by Regional Director Gene Beasley. All books, magazines, and newspapers were banned or not authorized from any source. All incoming photos would be received and stored in personal property without an opportunity for viewing. Although soft cover books were allowed under the policy, they were rejected and placed into personal property.

On December 4 or 5, 2019, officers went to each cell and confiscated inmates' radios and batteries. They were to be placed in personal property, but no property receipts were given.

On February 5, 2020, during a weekly inspection of Plaintiff's cell, Warden Ciolli and Captain Hurte removed eight manila folders containing letters from family and friends and materials from college courses and Biblical studies. The reason given to Plaintiff was that he had "too much property" under Beasley's policy.

On February 19, 2020, Warden Ciolli removed an envelope containing about eighty personal photos of family and friends and placed them into personal property.

On April 27, 2020, Plaintiff filed an informal inmate grievance concerning this issue on a BP-8 and then a BP-9 form on April 30, 2020. However, he did not receive a response from Warden Ciolli. On May 5, 2020, Plaintiff filed a BP-10 form to Gene Beasley, but Plaintiff did not receive a response. Plaintiff submitted a BP-11 appeal to the Central BOP Office on June 9, 2020, but no action was taken.

3

Plaintiff believes that the policy was designed to cause emotional damage and psychological hardship to inmates housed in SHU, thus compelling Plaintiff to enter general population at risk to his safety. Plaintiff was transferred to Federal Correctional Institution Victorville II on August 31, 2020, and he received his property on October 13, 2020. Plaintiff alleges that his radio, most of his religious materials, and other documents were missing from his personal property.

**III.    DISCUSSION**

    **A.  *Bivens* and the First Amendment**

Plaintiff alleges in his first claim that Defendants violated his First Amendment right to access the press and media,[1] and such deprivation amounts to cruel and unusual punishment under the Eighth Amendment because of the psychological and emotional harm to Plaintiff. In his second claim, Plaintiff alleges that the deprivation of religious materials violated his First Amendment right to the free exercise of religion. To succeed on his claims, Plaintiff must show that *Bivens* extends to violations of the First Amendment.

The Supreme Court first recognized an implied right of action for damages against federal officers in *Bivens*, 403 U.S. 388. The Court held that damages were recoverable directly under the Fourth Amendment when federal officers arrested and searched the plaintiff without a warrant or probable cause, and when they employed unreasonable force in making the arrest. *Id.* at 389, 395–96. In the years after *Bivens*, the Court also recognized implied rights of action for damages under the Fifth and Eighth Amendments. *See Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a damages remedy for a gender discrimination claim against a United States Congressman under the equal protection component of the Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a damages remedy against federal prison officials for failure to provide adequate medical treatment under the Eighth Amendment's Cruel and Unusual Punishment Clause).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, —— U.S. ——, 137 S. Ct. 1843, 1857 (2017)

---

[1] Plaintiff asserts that he has been denied his First Amendment right to "freedom of the press."

4

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). The Court has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'" *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). Accordingly, the courts must exercise caution before extending *Bivens* into a new context. *Id.* at 74. A *Bivens* remedy is not available if "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396.

In *Abbasi*, the Supreme Court laid out a two-step test for determining when a *Bivens* claim should be recognized. First, the court must ask whether the claim arises in a new *Bivens* context. *Abbasi*, 137 S. Ct. at 1864. A case presents a new context if it "is different in a meaningful way from previous *Bivens* cases decided by this Court." *Id. Abbasi* outlined the following non-exhaustive "list of differences that are meaningful enough to make a given context a new one":

> A case might differ in a meaningful way because of [1] the rank of the officers involved; [2] the constitutional right at issue; [3] the generality or specificity of the official action; [4] the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [5] the statutory or other legal mandate under which the officer was operating; [6] the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or [7] the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859–60. A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).

If the case presents a new *Bivens* context, then the court proceeds to step two. At step two, a court may extend *Bivens* and recognize a *Bivens* remedy in a new context only if two conditions are met. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). First, there must be the absence of an alternative, existing process for protecting the plaintiff's interests. *Id.* (citing *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). Second, the court must consider whether "any special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.* (quoting *Bush*, 462 U.S. at 378). While the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to

proceed." *Abbasi*, 137 S. Ct. at 1857–58. Therefore, "to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1858.

In this instance, Plaintiff asserts claims that present a new *Bivens* context. The Supreme Court has never recognized a *Bivens* claim under the First Amendment. *See Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir.), *cert. denied*, 140 S. Ct. 468 (2019) (citing *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)). The Ninth Circuit Court of Appeals has previously extended *Bivens* to some First Amendment claims. In *Gibson v. United States*, the Ninth Circuit found that plaintiffs asserted a cognizable claim through a *Bivens*-type action under the First Amendment. *Gibson*, 781 F.2d 1334, 1342 (9th Cir. 1986) (citing *Angola v. Civiletti*, 666 F.2d 1 (2d Cir. 1981)). More recently, the Ninth Circuit refused to expand *Bivens* to a prisoner's First Amendment access to the court claim in light of available alternative remedies. *Vega v. United States*, 881 F.3d 1146, 1155 (9th Cir. 2018). However, the court in *Boule v. Egbert* concluded that *Bivens* remedies were available for a border patrol agent's use of excessive force in violation of the Fourth Amendment and for First Amendment retaliation. *Boule v. Egbert*, 998 F.3d 370, 392 (9th Cir. 2021), *cert. granted in part*, No. 21-147, 2021 WL 5148065 (U.S. Nov. 5, 2021).

These cases are not controlling because the *Abbasi* opinion requires consideration of prior *Bivens* cases decided by the Supreme Court, not the Court of Appeals. *Abbasi*, 137 S. Ct. at 1864; *see Hoffman v. Preston*, No. 1:16-cv-01617-LJO-SAB (PC), 2019 WL 1865459, at *4 (E.D. Cal. Apr. 25, 2019), *report and recommendation adopted*, No. 1:16-cv-01617-LJO-SAB (PC), 2019 WL 2464765 (E.D. Cal. June 13, 2019). Moreover, the instant case "is different in a meaningful way" from these previous *Bivens* cases decided by the Ninth Circuit. Although the Ninth Circuit's cases are also brought under the First Amendment, different constitutional rights are at issue. Plaintiff's allegations concern the denial of his access to media and personal property, including documents from Plaintiff's religious studies. Because a *Bivens* remedy has not been recognized in these contexts, Plaintiff's claims arise in "new" First Amendment contexts, and the Court must determine whether to extend *Bivens* to Plaintiff's claims.

To make that determination, the Court must first consider whether there is "any

alternative, existing process for protecting the interest." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). The existence of an alternative remedial scheme "amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* Next, the Court must evaluate whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson v. Green*, 446 U.S. 16, 18 (1980)). Though the Supreme Court has not defined the phrase, "special factors counselling hesitation," the inquiry should consider "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. Specifically, the Court should consider the substantial defense costs created by personal-capacity claims against federal employees, as well as the "time and administrative costs attendant upon intrusions resulting from the discovery and trial process." *Id.* at 1856.

Both the existence of alternative remedial processes and other special factors counselling hesitation weigh against extending the *Bivens* remedy to Plaintiff's First Amendment claims. First, federal prisoners have numerous alternative remedies available to them, including the Federal Tort Claims Act and the Bureau of Prison's administrative grievance process.[2] *See* 28 U.S.C. §§ 1346(b)(1), 2674 (allowing an inmate to seek money damages for personal injuries and property claims arising out of a federal employee's negligence or wrongful conduct); 31 U.S.C. § 3724(a) (allowing the Attorney General to settle claims for personal injuries and damaged or lost personal property caused by federal law enforcement); 28 C.F.R. § 542.10(a) (establishing administrative-grievance procedure for "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement"). The Ninth Circuit has recognized the adequacy of these alternative remedial schemes with regarding First Amendment claims. *See Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019) (declining to extend *Bivens* remedy for a First Amendment retaliation claim in part because an alternative remedial structure through the Bureau of Prisons administrative grievance process); *Vega*, 881 F.3d at 1152–54 (declining to extend *Bivens* to First

---

[2] Plaintiff states in his complaint: "I would have filed a Federal TORT claim, but it's my understanding that since this is an issue concerning a policy that violates constitutional rights, I must file a 'Bivens action' in order to seek relief." (Doc. 21 at 6 (alterations in the original).)

Amendment access to court and Fifth Amendment procedural due process claim. Congress omitted from the Prison Litigation Reform Act a damages remedy for prisoners, *Buenrostro*, 770 F. App'x at 808, which suggests that "Congress might doubt the efficacy or necessity of a damages remedy" against federal officers. *Abbasi*, 137 S. Ct. at 1858. Moreover, plaintiff's claim implicates significant separation of powers concerns vis-à-vis prison administration and implying a new *Bivens* remedy for such claims would undoubtedly impose a large burden on the judiciary and prison officials. *Cox v. United States*, 2:17-cv-02349-CJC-KES, 2019 WL 5580966, at *8 (C.D. Cal. Aug. 30, 2019), *report and recommendation adopted*, 2019 WL 5579533 (C.D. Cal. Oct. 29, 2019).  Accordingly, the Court finds that Plaintiff has failed to state a claim under *Bivens* for the First Amendment contexts alleged by Plaintiff.

**B.  Eighth Amendment Prohibition on "Cruel and Unusual Punishment"**

The Supreme Court has recognized a cause of action under *Bivens* for violations of the Eighth Amendment Cruel and Unusual Punishments Clause. *See Carlson*, 446 U.S. at 18; *see also Abbasi*, 137 S. Ct. at 1848; *Vega*, 881 F.3d at 1152. It is well-settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eight Amendment prohibits the use of excessive physical force against prisoners. *Farmer*, 511 U.S. at 832 (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)). The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

To succeed on an Eighth Amendment deprivation claim, the alleged deprivation must be "sufficiently serious," resulting in the denial of "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (following *Estelle v. Gamble*, 429 U.S. 97 (1976); *Rhodes v. Chapman*, 452 U.S. 337 (1981)). In *Estelle*, the Supreme Court held that the only the "unnecessary and wanton infliction of pain implicates the Eighth Amendment. *Estelle*, 429 U.S. at 104. Therefore, a plaintiff advancing such a claim must allege that the defendant's

acts or omissions were sufficiently harmful do demonstrate a "deliberate indifference" to inmate safety or health. *Wilson*, 501 U.S. at 302–03; *Estelle*, 429 U.S. at 106.

Plaintiff does not raise an independent claim alleging an Eighth Amendment violation but instead attaches his Eighth Amendment claim to his First Amendment claim. His argument is two-fold. First, Plaintiff appears to claim that the deprivation of access to the news, books, and correspondence has caused great psychological and emotional harm amounting to cruel and unusual punishment. Plaintiff alleges that the deprivation has caused "anxiety, stress, worry, and confusion;" feelings of loneliness and "heartbreaking" thoughts of home; mental and emotional strain; feeling further outcast from society. Plaintiff contends that each defendant knew the policy violated the First Amendment rights but continued to enforce the policy with "callous indifference and evil intentions" that "brought about cruel punishment." (Doc. 21 at 8–10.)

Second, Plaintiff alleges that the policy restricting access to the media was an effort to compel inmates in protective custody to enter general population. Plaintiff asserts that going into general population places him "in a substantial risk of serious harm" and demonstrates a "deliberate indifference to [his] safety" and "reckless and callous indifference to the First Amendment rights." (*Id.* at 6.) Although he employs elements for an Eighth Amendment claim, these allegations are wholly speculative and unsupported by factual allegations.

Plaintiff offers only conclusory statements to support his claims of cruel and unusual punishment. *See Iqbal*, 556 U.S. at 678. Plaintiff has failed to allege that the nine-month deprivation of access to the press and other forms of media was sufficiently serious and resulted in the denial of life's necessities. Plaintiff has also failed to demonstrate that Defendants' enforcement of the policy amounted to deliberate indifference to Plaintiff's health or safety. Therefore, Plaintiff has failed to state a claim for cruel and unusual punishment under the Eighth Amendment.

**V.     CONCLUSION**

The Court finds that Plaintiff is unable to allege any facts that would state a cognizable civil rights claim and further amendment would be futile. For the foregoing reasons, the Court RECOMMENDS that this action be DISMISSED for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff's failure to file objections within the specified time may result in waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 15, 2021**        **/s/ Jennifer L. Thurston**
CHIEF UNITED STATES MAGISTRATE JUDGE